William L. Waldman, Esq.
Benjamin I. Rubinstein, Esq.
Erin C. Cassidy, Esq.
**K&L GATES LLP**
One Newark Center, 10th Floor
Newark, NJ 07102
Tel: (973) 848-4000
Facsimile: (973) 848-4001
William.Waldman@klgates.com
Benjamin.Rubinstein@klgates.com
Erin.Cassidy@klgates.com
*Attorneys For Plaintiff Provident Bank*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROVIDENT BANK,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br><br>MY MORTGAGE, INC., BRIAN GORGEI,<br>& CHRISTOPHER SCHIELE,<br><br>　　　　　　　Defendants. | Civil Action<br>Case No. |

### COMPLAINT

Plaintiff Provident Bank ("Plaintiff"), for its Complaint against Defendants My Mortgage,

Inc. ("My Mortgage"), Brian Gorgei ("Gorgei"), and Christopher Schiele ("Schiele"), states as

follows:

### THE PARTIES

1.      Plaintiff is a New Jersey Corporation.  Its principal place of business is in

Woodbridge, New Jersey.

2.      My Mortgage is a Maryland Corporation.  Upon information and belief, My

Mortgage's principal place of business is located at 2191 Defense Hwy, Suite 304, Crofton,

Maryland 21114.

3.      Gorgei is a natural person.  Upon information and belief, Gorgei is a citizen of Maryland and is the Chief Financial Officer and Treasurer of My Mortgage.

4.      Schiele is a natural person.  Upon information and belief, Schiele is a citizen of Maryland and is the Chief Executive Officer and President of My Mortgage.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff (which is a citizen of New Jersey) and Defendants (which are citizens of Maryland), and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendants because Defendants agreed, in several agreements from which this action arises, to the personal jurisdiction of this District.

7.      Venue is proper in this District because Defendants agreed, in several agreements from which this action arises, to venue in this District.

## FACTS

### The Parties' Agreements

8.      On or about February 18, 2025, Plaintiff as lender extended a $10,000,000.00 revolving line of credit to My Mortgage (the "Loan") pursuant to a Commitment Letter dated February 18, 2025, issued by Plaintiff and signed by My Mortgage and by Gorgei and Schiele as individual guarantors (the "Commitment Letter").  A true and correct copy of the Commitment Letter is attached hereto as **Exhibit A**.

9.      In connection with the Loan, on February 18, 2025, Plaintiff and My Mortgage executed a Mortgage Loan Warehousing Agreement with a credit limit of $10,000,000.00, plus

any Overline Advances as defined in the Commitment Letter (the "Loan Agreement").  The parties agreed that the Loan Agreement is governed by New Jersey law and, in Section 8(k) of the Loan Agreement, the parties agreed to be subject to the jurisdiction of this Court, and for venue to be laid in this District.  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.

10.    In connection with the Loan, on February 18, 2025, Plaintiff and My Mortgage executed a Revolving Promissory Note (the "Revolving Note") in an amount of $10,000,000.00, plus any Overline Advances as defined in the Commitment Letter.  The parties agreed that the Revolving Note is governed by New Jersey law and agreed to be subject to the jurisdiction of this Court, and for venue to be laid in this District.  A true and correct copy of the Revolving Note is attached hereto as **Exhibit C**.

11.    The Revolving Note provides that My Mortgage promised to pay the balance of the Loan on February 17, 2027 (the "Maturity Date").

12.    In connection with the Loan, Gorgei and Schiele each executed an absolute and unconditional Guaranty of Payment dated February 18, 2025, individually and personally, guaranteeing the payment and performance of all obligations of My Mortgage to Plaintiff (the "Guaranties").  The parties agreed that the Guaranties are governed by New Jersey law and, in Section 17 of the respective Guaranties, each Guarantor agreed to be subject to the jurisdiction of this Court, and for venue to be laid in this District.   A true and correct copy of the Guaranty signed by Gorgei is attached hereto as **Exhibit D**.  A true and correct copy of the Guaranty signed by Schiele is attached hereto as **Exhibit E**.

13.    Moreover, on February 18, 2025, My Mortgage provided to Plaintiff an Irrevocable Power of Attorney (the "POA"), which caused Plaintiff to be My Mortgage's true and lawful agent

to "sell, assign, transfer, endorse and deliver to itself or any purchaser or investor" any promissory note, mortgage, and/or deed of trust payable to My Mortgage. A true and correct copy of the Power of Attorney is attached hereto as **Exhibit F**.

14.     To secure payment of the Loan and the Revolving Note, on February 18, 2025, My Mortgage gave Plaintiff a Security Agreement on various collateral owned by My Mortgage, including then-existing and future residential mortgage loans and other assets owned by My Mortgage (the "Security Agreement"). The parties agreed that the Security Agreement is governed by New Jersey law. A true and correct copy of the Security Agreement is attached hereto as **Exhibit G**.

15.     The Security Agreement was perfected by Plaintiff by filing a UCC-1 Financing Statement with the State of Maryland (the "UCC-1"). A true and correct copy of the Recorded UCC-1 Financing Statement is attached hereto as **Exhibit H**.

16.     The Commitment Letter, the Loan Agreement, the Revolving Note, the Guaranties, the POA, the Security Agreement, and the UCC-1 and all related loan documents executed in connection with the Loan, are hereafter referred to as the "Loan Documents."

"Eligible Mortgage Loans" & "Eligible Collateral" under the Loan Documents

17.     Under the terms of the Loan Documents, My Mortgage could request from Plaintiff loan advances to fund or otherwise extend mortgage loans that were deemed Eligible Collateral.

18.     The Loan Agreement provides the following definition of "Eligible Collateral":

> "Eligible Collateral" shall mean *All Eligible Mortgage Loans* and *all other Collateral meeting the requirements of "Types of Eligible Collateral" set forth in the Commitment Letter*, and, in each case, as to which there shall have been delivered to Lender or its custodian those items set forth in Exhibit 1 attached hereto. In determining the eligibility of any Collateral, Lender may require delivery to it of satisfactory opinions of counsel relating to local laws of the jurisdiction to which the Collateral is related.

> Notwithstanding anything contained in this Agreement, Lender in its sole discretion may reject any Collateral as ineligible under this Agreement when presented by the Company for inclusion in the Borrowing Base.  Any of the requirements for eligibility may be waived by Lender; provided, however, that any Collateral which is initially acceptable as Eligible Collateral and which subsequently fails to meet any of the foregoing requirements or representations hereof shall forthwith cease to be Eligible Collateral.

> [(**Exhibit B**, at § 9 (*emphasis* added)).]

19.  The Loan Agreement defines "Eligible Mortgage Loan" to mean a mortgage loan that meets with the representations and warranties contained in Exhibit Four to the Loan Agreement.  **Exhibit B**, at § 9.  Exhibit four of the Loan Agreement, titled "Individual Mortgage Loan Representations and Warranties," sets forth thirty-one requirements as to mortgages extended by My Mortgage.  One such requirement is that the individual mortgage loan "conforms in all respects to the description of 'Types of Eligible Collateral Conforming Loans' set forth in the Commitment Letter."  **Exhibit B**, at Exhibit Four § P.

20.  The Commitment Letter defines "Types of Eligible Mortgage Loans" to mean:

> Any Mortgage Loan which (i) is *an Eligible Mortgage Loan* [as defined in the Loan Agreement], (ii) is a Conforming Mortgage Loan (Non-Conforming Loans require Lender's prior approval), (iii) is insured by the FHA, guaranteed by the VA or is a conventional mortgage loan that conforms in all respects (unless otherwise approved in writing by Lender) with applicable requirements of Fannie Mae or Freddie Mac, other than the fact that it is a "jumbo loan," (iv) conforms in all respects to the applicable requirements of the investment banker or financial institution providing the Take-Out Commitment, ***and*** (v) is secured by a first or second (2nd Mortgage Loans) priority perfected lien on the subject Property.  Any residential mortgage loan that does not conform to the applicable requirements of FHA VA, FNMA or FHLMC (excluding jumbo loans) will be considered a non-conforming mortgage loan (includes non-QM loans and 2nd Mortgage Loans).

> [(**Exhibit A** (*emphasis* added)).]

The Loan Advances

21.     Between March 11, 2025 and December 31, 2025, Plaintiff made over thirty-five loan advances to My Mortgage pursuant to the terms of the Loan Documents.

22.     My Mortgage represented to Plaintiff that the Loan Advances were to be for conventional loans underwritten to the Federal National Mortgage Association (FNMA) guidelines and covered by the My Mortgage's hedging program.

23.     On or around January 6, 2026, Plaintiff became aware that thirty-three loan advances made by Plaintiff to My Mortgage did not qualify as Eligible Collateral under the Loan Agreement (the "Loan Advances").

24.     Plaintiff made the Loan Advances relying on My Mortgage's representations.

25.     My Mortgage's representations were intentionally false.  Specifically, the Loan Advances were used to fund non-owner-occupied rehabilitation loans that were not covered by a valid take-out commitment (the "Underlying Mortgages").

26.     As a consequence, the Underlying Mortgages were not Eligible Mortgage Loans, because they did not satisfy requirement (m) of Exhibit 4 to the Loan Agreement.

27.     My Mortgage breached the Loan Agreement by using the Loan Advances to extend non-eligible mortgage loans.

28.     Furthermore, Plaintiff discovered that from November 4, 2025 to December 18, 2025, My Mortgage purchased at least thirty-three properties serving as collateral for the Underlying Mortgages (the "Underlying Properties").

29.      From November 4, 2025 to December 18, 2025, My Mortgage then sold the Underlying Properties to its own employees, including three to My Mortgage's CEO and President, Defendant-Guarantor Christopher Schiele on December 11, 2025.

30. The sales of the Underlying Properties and Underlying Mortgages were not arm's length transactions in any sense.

31. The Underlying Properties were sold above fair market price.

32. The Underlying Properties were, and on information and belief are, dilapidated properties that are not capable of occupancy for any length of time.

33. Upon information and belief, the Underlying Properties are not occupied.

34. In light of the foregoing Event(s) of Default, fraud, and breaches, on or about March 30, 2026, Plaintiff utilized the Power of Attorney to assign to Plaintiff the Underlying Mortgages, as Plaintiff is entitled to do so under the Loan Documents.

35. By letter dated April 8, 2026, Plaintiff declared the unpaid principal balance under the Loan Documents and all accrued interest, late charges, and other fees pursuant to the Loan Documents to be immediately due (the "Default Letter"). As of April 8, 2026, the principal sum under the Loan Documents totaled $8,094,892.40, plus interest, late charges, attorneys' fees and costs of suit, and such other amounts as are authorized under the Loan Documents.

36. Plaintiff demanded that My Mortgage, Schiele, and Gorgei together or individually, immediately make payment to Plaintiff of the full indebtedness and all other amounts due pursuant to the terms of the Loan Documents.

37. To date, My Mortgage has failed to cure such defaults by paying the indebtedness in full.

38. To date, Schiele has failed to cure such defaults by paying the indebtedness in full.

39. To date, Gorgei has failed to cure such defaults by paying the indebtedness in full.

40. As of June 3, 2026, the amount due on the Loan Documents is the principal sum of $8,094,892.40, plus interest, late charges, attorneys' fees and costs of suit, and such other amounts

as are authorized under the Loan Documents.

## COUNT I
## BREACH OF CONTRACT
**(As to Defendant My Mortgage, Inc.)**

41.     Plaintiff incorporates by reference and re-alleges the allegations set forth in the foregoing paragraphs as if fully stated herein.

42.     The Loan Documents, including the Commitment Letter, the Loan Agreement, the Revolving Note, the Power of Attorney, and the Security Agreement are valid, binding legal contracts, and My Mortgage is bound thereby.

43.     Plaintiff has performed all of its obligations under the Loan Documents.

44.     The Loan Documents provided My Mortgage could only extend certain Eligible Mortgage Loans.

45.     My Mortgage materially breached the Loan Documents.  Specifically, My Mortgage used the Loan Advances provided by Plaintiff to extend mortgages that were not Eligible Mortgage Loans.

46.     This was a breach of the Loan Documents.

47.     Plaintiff declared the debt immediately payable as permitted under the Loan Documents.

48.     My Mortgage has failed to pay the amounts immediately due.

49.     Plaintiff has been damaged by the foregoing Events of Default in the principal amount of at least $8,094,892.40, plus interest, late charges, attorneys' fees and costs of suit, and such other amounts as are authorized under the Loan Documents.

## COUNT II
## BREACH OF CONTRACT
**(As to Defendants Brian Gorgei and Christopher Schiele)**

50.     Plaintiff incorporates by reference and re-alleges the allegations set forth in the foregoing paragraphs as if fully stated herein.

51.     The Guaranties are valid contracts, binding on the Guarantors.

52.     Plaintiff has performed all of its obligations under the Guaranties and Loan Documents.

53.     As set forth above, My Mortgage breached the Loan Agreement by using loan advances to extend mortgages that did not qualify as Eligible Mortgage Loans.

54.     The Guarantors knew that Underlying Mortgages were not Eligible Mortgage Loans.

55.     Plaintiff provided notice of default to My Mortgage and Guarantors and declared the unpaid principle and related fees immediately due.

56.     My Mortgage failed to timely pay off the indebtedness of the Loan.

57.     This triggered the Guarantors' repayment obligations under the Guaranties.

58.     Guarantors have failed to timely pay off the indebtedness of the Loan.

59.     The Guarantors have breached the Guaranties by failing to repay Plaintiff as required by the Guaranties and requested by Plaintiff.

60.     Plaintiff has been damaged thereby in the principal amount of at least $8,094,892.40, plus interest, late charges, attorneys' fees and costs of suit, and such other amounts as are authorized under the Loan Documents.

**COUNT III**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
**(As to all Defendants)**

61.     Plaintiff incorporates by reference and re-alleges the allegations set forth in the foregoing paragraphs as if fully stated herein.

62. The Loan Documents, including the Commitment Letter, the Loan Agreement, the Revolving Note, the Security Agreement, and the Guaranties are valid, binding legal contracts, and the Defendants are bound thereby.

63. Plaintiff has performed all of its obligations under the Loan Documents.

64. The Loan Documents are governed by New Jersey law and as such, a covenant of good faith and fair dealing is implied in the Loan Documents.

65. Defendants breached the implied covenant of good faith and fair dealing and acted in bad faith by purchasing and then selling the Underlying Properties to individuals employed by My Mortgage, including to My Mortgage's CEO and President Schiele, above fair market price.

66. Defendants' self-dealing and bad faith conduct deprived Plaintiff of the benefits it reasonably expected under the Loan Documents.

67. Plaintiff has been damaged thereby in the principal amount of at least $8,094,892.40, plus interest, late charges, attorneys' fees and costs of suit, and such other amounts as are authorized under the Loan Documents.

**COUNT IV**
**FRAUD**
**(As to all Defendants)**

68. Plaintiff incorporates by reference and re-alleges the allegations set forth in the foregoing paragraphs as if fully stated herein.

69. From November 4, 2025 to December 18, 2025, My Mortgage purchased the Underlying Properties.

70. From November 4, 2025 to December 18, 2025, My Mortgage requested the Loan Advances from Plaintiff.

71. From November 4, 2025 to December 18, 2025, My Mortgage sold the

Underlying Properties to My Mortgage's employees, including three to My Mortgage's CEO and President, Schiele on December 11, 2025.

72. My Mortgage also used the Loan Advances to extend mortgages to its own employees at sales prices exceeding market value.

73. The foregoing scheme was deliberately hidden from Plaintiff.

74. My Mortgage led Plaintiff to believe that the Underlying Properties had been purchased in commercially-reasonable, arms-length transactions.

75. Plaintiff relied on the foregoing representations and omissions.

76. But, as set forth above, the Underlying Properties were not conveyed in arms-length transactions.

77. As a result of the foregoing, Plaintiff, who now holds the Underlying Mortgages, is under-secured, because the Underlying Mortgages do not bear a reasonable relationship to the value of the Underlying Properties.

78. The foregoing self-dealing and fraudulent conduct caused Plaintiff damage in an amount to be determined at trial, presently believed to be in excess of $1,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. Adjudging and decreeing that Defendants My Mortgage, Inc., Brian Gorgei, and Christopher Schiele, are pay to Plaintiff $8,094,892.40, which amount constitutes the outstanding balance of the Loan as of June 3, 2026, plus interest, late charges, attorneys' fees and costs of suit, and such other amounts as are authorized under the Loan Documents;

b. Adjudging and decreeing that Defendants My Mortgage, Inc., Brian Gorgei, and Christopher Schiele, are to pay Plaintiff at least $1,000,000.00 as a result of the fraudulent

scheme set forth above.

c.   Awarding Plaintiff pre-judgment and post-judgment interest on any monetary award made part of the judgment against Defendants;

d.   Awarding Plaintiff its reasonable attorneys' fees, costs, and expenses arising out of Plaintiff's enforcement of the Loan Documents; and

e.   Awarding such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: June 10, 2026                              **K&L GATES LLP**

By: *s/ Benjamin I. Rubinstein*
         Benjamin I. Rubinstein
         William L. Waldman
         Erin C. Cassidy
         One Newark Center, 10th Floor
         Newark, NJ 07102
         Tel: (973) 848-4000
         Facsimile: (973) 848-4001
         Benjamin.Rubinstein@Klgates.com
         William.Waldman@Klgates.com
         Erin.Cassidy@Klgates.com
         *Attorneys For Plaintiff Provident Bank*

- 12 -