**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PROVIDENT BANK,<br>Plaintiff,<br>v.<br><br>MY MORTGAGE, INC., BRIAN GORGEI, & CHRISTOPHER SCHIELE,<br><br>Defendants. | Civil Action<br>Case No. 2:26-cv-06911-ES-JRE<br><br>**Motion Day: October 19, 2026**<br><br>*Document Filed Electronically* |

---

# PLAINTIFF PROVIDENT BANK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Benjamin I. Rubinstein
William L. Waldman
**K&L GATES LLP**
One Newark Center, 10th Floor
Newark, New Jersey 07102
973-848-4000
Benjamin.Rubinstein@klgates.com
William.Waldman@klgates.com
*Attorneys for Plaintiff Provident Bank*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

SUMMARY OF RELEVANT ALLEGATIONS ........ 3

A. The Loan Documents. ........ 3

B. The Transactions. ........ 5

LEGAL STANDARD ........ 7

ARGUMENT ........ 7

A. The Fraud claim is not barred by the economic loss doctrine. ........ 7

B. The Complaint sufficiently pleads fraud under Rule 9(b). ........ 10

C. The Complaint alleges that My Mortgage exercised its discretion under the contract to frustrate Plaintiff's rights, which is a breach of the implied covenant of good faith and fair dealing. ........ 11

D. Alternatively, leave to amend the Complaint should be granted. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citizens United Reciprocal Exch. v. Meer*,
321 F. Supp. 3d 479 (D.N.J. 2018) .......... 10

*Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*,
516 F. Supp. 3d 407 (D.N.J. 2021) .......... 8, 9

*JJD Elec., LLC v. SunPower Corp., Sys.*,
738 F. Supp. 3d 569 (D.N.J. 2024), *appeal dismissed sub nom. JJD Elec. LLC v. Sunpower Corp Sys.*, No. 25-2700, 2026 WL 2621278 (3d Cir. June 15, 2026) .......... 12

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .......... 7, 15

*Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*,
449 F. Supp. 3d 449 (D.N.J. 2020) .......... 12

*RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*,
861 F. Supp. 2d 436 (D.N.J. 2012) .......... 7, 8

*State Farm Guar. Ins. Co. v. Tri-Cnty. Chiropractic & Rehab. Ctr., P.C.*,
No. CV 22-4852 (ES) (CLW), 2023 WL 4362748 (D.N.J. July 6, 2023) .......... 11

*Wilson v. Amerada Hess Corp.*,
168 N.J. 236 (2001) .......... 12, 13

**Court Rules**

Fed. R. Civ. P. 15(a)(2) .......... 14

Rule 9 .......... 11

Rule 9(b) .......... 2, 10

Rule 12(b)(6) .......... 7

## PRELIMINARY STATEMENT

My Mortgage bought the properties securing Provident Bank's collateral, then flipped them to its own employees, including three sales to its own CEO, at above-market prices, and used Provident Bank's money to do it. Defendants now ask this Court to dismiss the two claims that call that scheme what it is: fraud (Count IV) and breach of the covenant of good faith and fair dealing (Count III). They do not move to dismiss the breach of contract claims.

My Mortgage did not simply fail to perform a contract. Instead, My Mortgage told Provident Bank, again and again, that each of the more than 35 Loan Advances it requested between March 11, 2025, and December 31, 2025, would fund conventional loans underwritten to Federal National Mortgage Association guidelines and covered by its own hedging program. Provident Bank relied on those representations and funded the advances. In fact, at least 33 of those advances funded non-owner-occupied rehabilitation loans with no valid take-out commitment behind them, loans that could never have qualified as Eligible Collateral under the Loan Agreement in the first place. My Mortgage then used those advances to buy the properties securing them and resell the properties to its own employees, including three properties to its President and CEO, Christopher Schiele, at prices above fair market value. My Mortgage hid all of this from Provident Bank and let

Provident Bank believe the properties had changed hands in ordinary, arm's-length transactions.

As described below, Defendants' motion fails for three independent reasons. First, the economic loss doctrine does not bar the fraud claim because My Mortgage's representations were not promises of future contract performance, they were false statements of present fact made to induce Provident Bank's separate decisions to fund each individual advance.

Second, the Complaint satisfies Rule 9(b) because it identifies exactly who did what, when, and to whose benefit: My Mortgage purchased the Underlying Properties between November 4, 2025, and December 18, 2025, sold them to its own employees, and funneled three of the properties to Schiele on December 11, 2025.

Third, Count III survives because My Mortgage exercised the discretion that the Loan Documents left in its hands, selecting borrowers, originating loans, and controlling both sides of the property sales that determined the value of Provident Bank's collateral, for the purpose of enriching its own executives at Provident Bank's expense. That is bad faith.

In short, Defendants ask the Court to treat their fraudulent scheme as nothing more than a missed borrowing-base requirement. It is not. The motion should be denied. To the extent the Court finds any deficiency in the pleading of Counts III or

IV, Provident Bank respectfully requests leave to amend to address the issues raised in the motion as well as other relevant matters.

## SUMMARY OF RELEVANT ALLEGATIONS

### A. The Loan Documents.

On February 18, 2025, Provident Bank, as lender, extended a $10,000,000.00 revolving line of credit to My Mortgage (the "Loan") pursuant to a Commitment Letter dated February 18, 2025, signed by My Mortgage and by Gorgei and Schiele as individual guarantors (the "Commitment Letter"). Complaint, ¶ 8. The Commitment Letter included a "due diligence" provision stating that Provident Bank was relying upon representations made by My Mortgage in connection with any documents submitted by My Mortgage. Complaint, Exhibit A, at 5.

In connection with the Loan, on the same date, My Mortgage and Provident Bank executed a Mortgage Loan Warehousing Agreement with a credit limit of $10,000,000.00, plus any Overline Advances as defined in the Commitment Letter (the "Loan Agreement"). *Id.*, ¶ 9. The Loan Agreement incorporated the terms of the Commitment Letter as if fully set forth therein. Complaint, Exhibit B, Loan Agreement, Section 1(k); *see also* Loan Agreement, Section 4(m) (titled "True and Complete Disclosure").

My Mortgage and Provident Bank also executed a Revolving Promissory Note in the amount of $10,000,000.00, plus any Overline Advances (the "Revolving

Note"), under which My Mortgage promised to repay the balance of the Loan by February 17, 2027. *Id.*, ¶¶ 10 – 11. Gorgei and Schiele each separately executed an absolute and unconditional Guaranty of Payment dated February 18, 2025, personally guaranteeing all My Mortgage's obligations to Provident Bank (together, the "Guaranties"). *Id.*, ¶ 12. My Mortgage also provided Provident Bank an Irrevocable Power of Attorney dated February 18, 2025, making Provident Bank My Mortgage's true and lawful agent with authority to sell, assign, transfer, endorse, and deliver to itself or any purchaser or investor any promissory note, mortgage, or deed of trust payable to My Mortgage (the "Power of Attorney"). *Id.*, ¶ 13.

Finally, to secure payment of the Loan and the Revolving Note, My Mortgage gave Provident Bank a security interest in various collateral owned by My Mortgage, including then-existing and future residential mortgage loans and other assets (the "Security Agreement"), which Provident Bank perfected by filing a UCC-1 financing statement with the State of Maryland. *Id.*, ¶¶ 14 – 15.

The Commitment Letter, the Loan Agreement, the Revolving Note, the Guaranties, the Power of Attorney, the Security Agreement, and the UCC-1 financing statement, together with all related loan documents executed in connection with the Loan, are referred to collectively as the "Loan Documents."

Under the Loan Documents, My Mortgage could request loan advances from Provident Bank to fund or otherwise extend mortgage loans that were deemed "Eligible Collateral," defined as all Eligible Mortgage Loans and other collateral meeting the requirements set forth in the Commitment Letter and for which the items required by Exhibit 1 to the Loan Agreement had been delivered to Provident Bank. *Id.*, ¶¶ 19 – 20.

Each loan advance required that My Mortgage provide individual documentation in support of the request. Complaint, Exhibit B, Section 3(b). Pursuant to the Loan Documents, Provident Bank, in its sole discretion, could reject collateral presented for inclusion in the borrowing base. *Id.* at ¶ 18.

**B. The Transactions.**

Between March 11, 2025, and December 31, 2025, My Mortgage requested more than 35 loan advances from Provident Bank. Complaint, ¶ 21. Each one of those loan advances required that My Mortgage make individualized submissions, which included their own representations to Provident Bank. *Id.*, ¶ 22; Complaint, Exhibit B, Section 3(b). As part of those submissions, My Mortgage "represented to Plaintiff that the Loan Advances were to be for conventional loans underwritten to the Federal National Mortgage Association (FNMA) guidelines and covered by the My Mortgage's hedging program." *Id.*, ¶ 22. These representations were made

to induce Provident Bank into making the loan advances. Provident Bank relied on those representations in making more than 35 loan advances. *Id.*, ¶ 21.

On or around January 6, 2026, Provident Bank became aware that thirty-three of the Loan Advances did not, in fact, qualify as Eligible Collateral under the Loan Agreement. *Id.*, ¶ 23. Provident Bank learned that My Mortgage had used the loan advances to fund non-owner-occupied rehabilitation loans that were not covered by a valid take-out commitment. *Id.*, ¶ 25. Moreover, My Mortgage had purchased at least 33 of those properties, between November 4, 2025, and December 18, 2025, and then sold them to its own employees (at inflated prices) — including three properties which were sold to My Mortgage's CEO and President, Defendant-Guarantor Christopher Schiele. *Id.*, ¶¶ 28 – 29.

The sales of the properties and mortgages were not arm's length transactions in any sense, and the properties were sold above fair market price. *Id.*, ¶¶ 30 – 31. On information and belief, the properties were, and remain, dilapidated properties not capable of occupancy for any length of time, and are not occupied. *Id.*, ¶¶ 32 – 33.

In light of the foregoing Events of Default, fraud, and breaches, on or about March 30, 2026, Provident Bank utilized the Power of Attorney to assign to itself the Underlying Mortgages. *Id.*, ¶ 34. By letter dated April 8, 2026, Provident Bank

declared the unpaid principal balance under the Loan Documents, together with accrued interest, late charges, and other fees, immediately due; as of that date, the principal sum totaled $8,094,892.40. *Id.*, ¶ 35. My Mortgage, Gorgei, and Schiele have each failed to cure these defaults. *Id.*, ¶ 37.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must state a facially plausible claim. In evaluating a motion to dismiss under Rule 12(b)(6), the Court accepts well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The Complaint need not establish that Provident Bank will ultimately prevail, but need only allege sufficient factual matter to permit a reasonable inference that Defendants are liable for the misconduct alleged. *Id* at 231-234. As set forth more fully below, both the fraud and the implied covenant claim are robustly supported by the allegations in the Complaint. As a result, the motion should be denied.

## ARGUMENT

### A. The Fraud claim is not barred by the economic loss doctrine.

Plaintiff's fraud claim is not barred by the economic loss doctrine because it alleges harms that do not flow only from the contracts in this matter. "The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*,

861 F. Supp. 2d 436, 451 (D.N.J. 2012) (internal quotes omitted). "Fraud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations." *Id.* (quoting *Barton v. RCI, LLC*, No. 10–3657, 2011 WL 3022238, *7 (D.N.J. July 22, 2011)). Moreover, "a plaintiff may be permitted to proceed with tort claims sounding fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *Id.*; *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 418 (D.N.J. 2021) ("The doctrine does not apply, however, when a party uses misrepresentations to induce another into entering an agreement.").

In the matter of *Durr Mechanical*, the Hon. Judge Kevin McNulty offered helpful illustrations from prior cases of what constitutes fraudulent inducement. The court noted that a buyer had properly pled a fraudulent inducement claim against a hazelnut manufacturer that had "inaccurately represented that it had adequate liability insurance," prior to executing their agreement. *Durr Mech. Constr.,* 516 F. Supp. 3d at 418 (citing *Wilhelm Reuss GmbH & Co. KG, Lebensmittelwerk v. E. Coast Warehouse & Distrib. Corp.*, Civ. No. 16-4370, 2018 WL 3122332, at *1 (D.N.J. June 26, 2018)). Similarly, another court found that a buyer had properly pled a fraudulent inducement claim against a seller who misrepresented the "type of

model" of printer it was selling. *Id.* (citing *G & F Graphic Servs., Inc. v. Graphic Innovators*, 18 F. Supp. 3d 583, 585 (D.N.J. 2014)).

Here, Provident Bank issued more than 35 loan advances to My Mortgage. Complaint, ¶ 21. Each of these loan advances required individual consideration, because the Loan Documents did not automatically entitle My Mortgage to loan advances. Instead, My Mortgage could only receive a loan advance if it met specific requirements set in the Loan Documents. For each loan advance, My Mortgage had to provide individual documentation in support of the request. Complaint, Exhibit B, Section 3(b). This information was provided by My Mortgage to Provident Bank so that My Mortgage could induce Provident Bank to approve the request (because the Loan Documents allowed Provident Bank to approve or reject the individual requests). *Id.* at ¶ 18.

The Complaint alleges that My Mortgage used false statements and omissions concerning then-existing facts to induce those discrete funding decisions. My Mortgage falsely represented that the Loan Advances would fund conventional loans underwritten to FNMA guidelines and covered by its hedging program; Provident Bank relied on those representations in funding each Loan Advance; and each Loan Advance instead funded a non-owner-occupied rehabilitation loan that was not covered by valid take-out commitments. *Id.* ¶¶ 21–27.

Critically, the Complaint also alleges that My Mortgage concealed an insider-transaction scheme in which it purchased each underlying property, sold them to a My Mortgage employee, including three sales to its CEO Schiele, at above-market prices, and used the Loan Advances to extend mortgages to those employees at prices exceeding market value. *Id.* ¶¶ 28–33, 69–76. This fraudulent insider scheme was separate from Defendants' underlying breaches of the Loan Documents.

By misrepresenting the nature of the transactions, My Mortgage successfully induced Provident Bank into issuing each one of the more than 35 loan advances it made. As in the cases described in *Durr Mechanical*, the parties here had executed an agreement, but each of the more than 35 Loan Advances was preceded by alleged misrepresentations that induced Provident Bank to enter into each transaction.

For these reasons, the Court should deny the motion to dismiss as to Count IV of the Complaint.

**B. The Complaint sufficiently pleads fraud under Rule 9(b).**

The Complaint identifies Defendants' fraud with the level of detail and particularity required by Rule 9(b). The Rule only requires that a complaint "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 486 (D.N.J. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). "But plaintiffs 'need

not, however, plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.''' *State Farm Guar. Ins. Co. v. Tri-Cnty. Chiropractic & Rehab. Ctr., P.C.*, No. CV 22-4852 (ES) (CLW), 2023 WL 4362748, at *3 (D.N.J. July 6, 2023) (internal quotes omitted).

The Complaint identifies the misrepresentations made by My Mortgage in connection with the loan advances. *See* Complaint, ¶¶ 22, 25, 28 – 33. The Complaint further identifies the specific transactions, the loan advances dated between November 4, 2025, and December 18, 2025. *Id.*, ¶ 70. To the extent My Mortgage requires allegations concerning the specific times, dates, and places, those details are identified by the timeframe of the transactions at issue. The Complaint further identifies who made the transactions and benefitted from them and specifically identifies examples of Defendants' fraudulent insider flipping scheme, including participation in such scheme individually by Defendant-Guarantor Schiele. *Id.*, ¶¶ 29-33; 69 – 72. These allegations are more than adequate under Rule 9.

### C. The Complaint alleges that My Mortgage exercised its discretion under the contract to frustrate Plaintiff's rights, which is a breach of the implied covenant of good faith and fair dealing.

My Mortgage exercised its discretion under the Loan Documents to economically harm Plaintiff. Such conduct, as alleged in the Complaint, is a breach

of the implied covenant of good faith and fair dealing. "In New Jersey, every contract contains an implied covenant of good faith and fair dealing." *JJD Elec., LLC v. SunPower Corp., Sys.*, 738 F. Supp. 3d 569, 580 (D.N.J. 2024), *appeal dismissed sub nom. JJD Elec. LLC v. Sunpower Corp Sys.*, No. 25-2700, 2026 WL 2621278 (3d Cir. June 15, 2026). "The covenant mandates that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (internal quotes omitted). "A party breaches the implied covenant when it exercises its contractual functions arbitrarily, unreasonably, or capriciously and with an improper motive." *Id.* (quoting *Wilmington Sav. Fund Soc'y, FSB v. Daw*, 469 N.J. Super. 437 (2021)).

"Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). "To sufficiently plead a breach of the duty of good faith and fair dealing under New Jersey law, a plaintiff must allege that '(1) the defendant act[ed] in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract.'" *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J.

2020) (quoting *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009)).

Here, the Loan Agreement leaves substantial discretion with My Mortgage over precisely the conduct at issue. My Mortgage, and not Provident Bank, selects the borrowers, structures the loans, chooses the appraisers, and, where its own affiliates or employees are the ultimate purchasers of the underlying real estate, effectively controls both sides of the property sale that determines the value of Provident Bank's collateral.

My Mortgage used its practical control over the origination and property-disposition process to steer the properties to its own executives, including its CEO, at above-market prices, guaranteeing that the properties would never provide adequate security; this is precisely the kind of self-interested exercise of contractually conferred latitude that courts hold may breach the implied covenant. *See Wilson*, 168 N.J. at 251 (citing Steven J. Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 Harv. L. Rev. 369 (1980)) (explaining the need for a "the discretion-exercising party not unilaterally use that authority in a way that intentionally subjects the other party to a risk beyond the normal business risks that the parties could have contemplated at the time of contract formation").

Defendants' argument that the implied covenant claim is duplicative rests on treating every one of Provident Bank's allegations as though it maps onto a single express requirement of Exhibit 4. But Provident Bank's implied covenant theory is not limited to the absence of a take-out commitment under requirement (m). The theory rests on My Mortgage's decision to buy the properties itself and resell them to insiders at inflated prices, a course of self-dealing conduct that the thirty-one enumerated representations in Exhibit 4 do not comprehensively address, because Exhibit 4 speaks to the state of a given mortgage loan at a point in time, not to a lender-controlled pattern of insider property flips. The conduct exposed Provident Bank to significantly higher transactional risk than that for which it bargained.

These allegations plausibly support bad faith and improper motive to deprive Provident Bank of the collateral protection it reasonably expected under the Loan Documents.

**D. Alternatively, leave to amend the Complaint should be granted.**

Should the Court conclude that Counts III or IV require greater factual specificity or are otherwise deficient, Provident Bank would respectfully request that the Court grant leave to amend the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). Because amendment at this early phase of the case would be neither inequitable nor

futile, leave to amend should be granted. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Because Provident Bank has not amended its complaint to date, it also requests leave to amend the Complaint to allege additional facts regarding Defendants' scheme.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' partial motion to dismiss. Alternatively, Provident Bank respectfully requests leave to amend the Complaint and cure any identified deficiency.

Date: September 25, 2026

Respectfully submitted,

**K&L GATES LLP**

By: */s/ Benjamin I. Rubinstein*
Benjamin I. Rubinstein
William L. Waldman
One Newark Center, 10th Floor
Newark, NJ 07102
Telephone: 973-848-4000
Facsimile: 973-848-4001
Benjamin.Rubinstein@klgates.com
William.Waldman@klgates.com
*Attorneys for Plaintiff Provident Bank*